Arthur I. Seld, Esq. Attorney for the Town of Seneca Falls
This opinion is written as an interpretation of Agriculture and Markets Law, Article 7 (§§ 106-126) as enacted by chapter 220 of the Laws of 1978 and amended by chapter 221 of the Laws of 1978, both of which will go into effect January 1, 1980; it does not apply to the statute currently in effect.
The new Agriculture and Markets Law, Article 7 is a revision of the law relating to the licensing, identification and control of dogs. As such, previous court decisions and legal opinions may or may not be relevant in its interpretation.
A noteworthy change in the statute is that it no longer provides for "dog wardens"; it provides for "dog control officers."
In several instances the statute contains the expression "each village in which licenses are issued." Where that expression is used, the villages referred to have the same function in relation to dogs as towns and cities have; however, those are only the ones mentioned in Agriculture and Markets Law § 109, subdivision 1, paragraph (b) as being all villages in Westchester County and those villages in Nassau County that by resolution require the town to issue licenses. In this opinion, when we refer to villages, we refer to all villages in the state except those in Nassau County that issue their own licenses and all villages in Westchester County.
Agriculture and Markets Law § 114 provides that every town and cityshall appoint and any village and any county may appoint one or more "dog control officers." Because the whole area of the state consists of either towns or cities and they must appoint such officers, obviously, if a county may appoint such officers, the statute contemplates concurrent jurisdiction of the county officer, on the one hand, and the city or town officer on the other; similarly, concurrent jurisdiction is contemplated between the town officer, on the one hand, and a village officer on the other. Nowhere is there any provision in the Agriculture and Markets Law that if a county exercises its option to appoint a dog control officer, that officer is to replace the town and city dog control officers within the county either in whole or in part; neither is there any indication in the statute that if a village exercises its option to appoint a dog control officer, the town dog control officer of the town within which the village lies no longer would have jurisdiction within the village. On the contrary, Agriculture and Markets Law § 114, subdivision 1 indicates that the function of such an officer is to be exercised "within the appointing municipality" and subdivision 3 authorizes the Commissioner of Agriculture and Markets to appoint as many state dog control officers as he deems necessary to "supervise the provisions" of the statute. As further illustration of legislative intent to provide concurrent jurisdiction, consider Agriculture and Markets Law § 118, subdivisions 1 and 2 which provide that any dog control officer or peace officer in the employ of or under contract to a municipality shall seize any dog which is not identified and which is not on the owner's premises and any dog which is not licensed, whether on or off the owner's premises; also that such an officer may seize any dog "in violation ofany local law or ordinance relating to the control of dogs, adopted by any municipality pursuant to the provisions of" Article 7 of the Agriculture and Markets Law.
It goes without saying that a dog control officer appointed by a municipality also must enforce all local laws, ordinances or resolutions of the appointing municipality in relation to control of dogs.
In our opinion, a town must enforce Article 7 of the Agriculture and Markets Law within its territorial limits, including a village which lies within that town but the village itself, by appointing a dog control officer, also may enforce Article 7 of the Agriculture and Markets Law within its boundaries; a town dog control officer may enforce the provisions of a village dog control local law, ordinance or resolution but is not required to do so and if a village wishes to have its dog control program enforced it is up to the village to provide, by one of the means described in the statute, for its own dog control system.
Our informal opinion at 1975 Opinions of the Attorney General 153 is not in conflict herewith because the relative jurisdictional factors discussed herein are specifically provided for by state statute which overcomes any contrary construction applicable in the absence of such a statute.